UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT DROSTE and CLAUDIA DROSTE, | ) ) ) |
| Plaintiff(s), | ) ) |
| vs. | ) ) Case No. 4:04CV904 JCH |
| DOUGLAS JULIEN, | ) ) ) |
| Defendant(s). | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Douglas Julien's Motion for Summary Judgment, filed November 15, 2005. (Doc. No. 39). The matter is fully briefed and ready for disposition.

**BACKGROUND**

By way of background, Plaintiffs Robert and Claudia Droste reside in a subdivision named Woodcliffe Estates, in Alton, Illinois (the "Subdivision"). (Defendant Douglas Julien's Statement of Uncontroverted Facts ("Defendant's Facts"), ¶ 1). Before constructing their current residence, Plaintiffs submitted to the lot owners of the Subdivision a set of house plans and a site location map for a single family residence, to be built on the Woodcliffe lot owned by Plaintiffs. (Compl., ¶ 13). Three of the five lot owners in the Subdivision refused to approve the original plans. (Id., ¶ 14). Plaintiffs therefore filed a Complaint in the Circuit Court of Madison County, Illinois, seeking a judgment approving their proposed house plans, and an order finding the Subdivision's Plan of Restrictions invalid and unenforceable, among other things. (Defendant's Facts, ¶ 3).

In or around April, 2001, Defendant Douglas Julien, an architect, became involved in the Illinois litigation. Defendant eventually attempted to modify Plaintiffs' house plans, in an effort to

resolve the Illinois litigation. (Defendant's Facts, ¶¶ 27, 32).[1]  It was Plaintiff Claudia Droste's understanding that Defendant would design the side of the house facing the street to make both Plaintiffs and the other homeowners happy. (Id., ¶ 36). Claudia Droste further understood Defendant's design would affect neither the interior design of the home, nor the other three sides of the home. (Id.).

On May 30, 2001, Plaintiffs, the Subdivision, and the lot owners entered into a Stipulation, approved by the Madison County Circuit Court, and stating in relevant part as follows:

> 1.  The Plaintiffs have submitted the architecture plans which are attached hereto as exhibit A and are incorporated herein by reference; these plans were prepared in part and/or approved by architect Doug Julien.
>
> 2.  The Defendants Woodcliffe Estates, Schrempf, Stobbs, and Leweys [i.e., the other lot owners] and the Plaintiffs have all approved the attached plans as contained in Exhibit A; all Defendants have either authorized settlement or not objected to settlement....
>
> 4.  The Defendants agree to Architect Doug Julien acting as their agent to inspect and monitor the construction of Plaintiffs' residence in accordance with the plans hereby approved. Defendants Woodcliffe Estates, Schrempf, Stobbs and Lewey further agree to architect Doug Julien acting as their agent to approve any modifications to the aforesaid plans. Architect Julien shall be allowed to appear on Plaintiffs' building site for inspections in the usual and customary manner. Plaintiffs shall cooperate in good faith regarding any and all improvements and changes as recommended by Architect Julien. Plaintiffs shall be responsible for the fees of Doug Julien relating to the changes which were made to the prior plans of Plaintiffs, as shown in Exhibit A, any other fees directly related to this litigation and the future inspections and consultation with Plaintiffs,...
>
> 5.  Plaintiffs shall complete building of their residence within 10 months of the issuance of the building permit....

(Stipulation and Order, attached to Defendant's Motion for Summary Judgment as Exh. I). Plaintiff Claudia Droste understood that changes could be made to the agreed upon plans, if Defendant agreed

---

[1] The parties dispute whether, in proposing modifications, Defendant was acting on behalf of Plaintiffs, or on behalf of the other homeowners in the Subdivision. (See Defendant's Facts, ¶ 32, and Plaintiffs' Response thereto).

to the changes. (Defendant's Facts, ¶ 88). Claudia Droste further understood that if no agreement were reached on any changes, the home would have to be built in accordance with the drawings attached to the court order as Exhibit A. (Id., ¶ 89).

According to Plaintiffs, subsequent to the entry of the May 30, 2001 Stipulation and Order, Plaintiffs' contractor informed Plaintiffs that the May house plan was flawed. (Compl., ¶ 18). As a result, Defendant again modified the house plans in June, 2001 ("June house plans"); however, Plaintiffs maintain Defendant's June house plans contained numerous errors and omissions which required Plaintiffs to re-design the interior of their home, to tear out certain construction, to re-construct portions of the interior of the home, and to make other undesired changes to the home, in order to comply with the May 30, 2001 court order. (Id., ¶¶ 18, 19).

During the construction of Plaintiffs' home, Defendant periodically visited the site to observe the progress of the construction, and to report to the Subdivision as to the home's compliance with the plans. Further, at times Defendant would testify in court in Madison County, during proceedings initiated by the Subdivision in an effort to force Plaintiffs to uphold their end of the agreement. (Defendant's Facts, ¶¶ 163, 180, 213). On October 23, 2003, the trial judge in Illinois entered an Order of Adjudication Indirect Civil Contempt, holding in relevant part as follows:

> This cause being heard August 22, 2003, pursuant to a Petition for Adjudication of Indirect Civil Contempt and rule to show cause directed to Plaintiffs to show cause, if any, why they should not be found in indirect civil contempt and sanctioned immediately for their failure to comply with the Court's Order entered on May 30, 2001, directing Plaintiffs to build their house in conformity with that Order;....
>
> And the Court having heard testimony of the only witness, Doug Julien, Architect....and being fully advised in the premises hereby finds:....
>
> 3. As of August 22, 2003, Plaintiffs failed to complete the house within the period of time allowed and failed to construct the house in conformity with the drawings that they agreed to and that this Court ordered,....

4. Plaintiffs did not give any legally sufficient reasons for their failure to comply with the Order....

IT IS THEREFORE ORDERED AND ADJUDGED that:

1. Plaintiffs are in indirect civil contempt of Court for their willful failure to obey the Court's Order as herein stated.

(Order of Adjudication Indirect Civil Contempt, attached to Defendant's Motion for Summary Judgment as Exh. FF). Plaintiffs were ordered to pay $2,500.00 to the Madison County Circuit Clerk, as a sanction for their indirect civil contempt. (Id.). Plaintiffs further were ordered to pay Defendant Julien the sum of $4,176.00, representing the fees and costs he incurred in overseeing Plaintiffs' efforts to comply with the Court's earlier Order, and to pay the law firm of Lucco & Brown the sum of $3,500.00, representing a portion of the fees and costs it incurred in prosecuting the Civil Contempt Order of behalf of the Subdivision. (Id.).

Plaintiffs filed the instant Complaint on July 19, 2004. (Doc. No. 1). In Count III of their Complaint[2], Plaintiffs allege Defendant made a number of false representations of fact to Plaintiffs, beginning on May 12, 2001, and continuing through May 30, 2001. (Id., ¶ 33). As stated above, Defendant filed the instant Motion for Summary Judgment on November 15, 2005, asserting (1) Plaintiffs' claims are barred by the doctrines of res judicata and collateral; (2) Plaintiffs have made judicial admissions defeating their claims; (3) contract interpretation requires a finding against Plaintiffs; and (4) Plaintiffs have failed to establish their fraud claims. (Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Defendant's Memo in Support"), PP. 3-14).[3]

---

[2] In an Order entered March 10, 2006, this Court dismissed Counts I and II of Plaintiffs' Complaint. (Doc. No. 93).

[3] Defendant further asserts Plaintiffs failed to establish a claim for negligence with sufficient testimony. (Defendant's Memo in Support, PP. 6-7). The Court need not consider this argument,

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Id. at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION[4]

---

in light of its ruling dismissing Count I of Plaintiffs' Complaint.

[4] As part of his Motion for Summary Judgment, Defendant submits a Statement of Uncontroverted Facts consisting of 307 allegedly undisputed facts. (Doc. No. 39). Despite the voluminous nature of Defendant's Statement of Uncontroverted Facts, the Court will address only

## I. *Res Judicata*

In his Motion for Summary Judgment, Defendant first asserts Plaintiffs' claims are barred by the doctrine of *res judicata*. (Defendant's Memo in Support, PP. 3-6). Specifically, Defendant maintains the claims now made were in fact, or should have been, raised in the underlying litigation. (Id., P. 3).

"A federal court must give a state court judgment the same preclusive effect it would have in the courts of the rendering state." Misischia v. St. John's Mercy Health System, 2005 WL 1875035 at * 5 (E.D. Mo. Aug. 5, 2005) (citation omitted). Under Missouri law[5], the doctrine of *res judicata* bars a claim if four requisite elements are satisfied: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or status of the person for or against whom the claim is made." Becker v. St. Charles Boat & Motor Inc., 131 S.W.3d 868, 870 (Mo. App. 2004) (citation omitted). See also Misischia, 2005 WL 1875035 at * 5 (citations omitted) ("The doctrine applies to block a second lawsuit when four elements are the same in both lawsuits: the subject matter, the cause of action, the parties, and the status in which the defendant is sued"). "Moreover, *res judicata* precludes not only those issues on which the court in the former case was required to pronounce judgment, but to every point properly belonging to the subject matter of the litigation and which the parties, exercising reasonable

---

those arguments raised and briefed in the memorandum of law submitted in support of Defendant's motion.

[5] Despite its earlier ruling that the substantive law of Illinois should govern Plaintiffs' cause of action, the Court will apply Missouri law in its discussion of *res judicata* and collateral estoppel, as the Eighth Circuit has held that, "where the first action was brought in state court and involved non-federal matters, the overwhelming view is that the federal district court is required under *Erie* to follow the res judicata law of the forum state." Ewing v. St. Louis-Clayton Orthopedic Group, 790 F.2d 682, 685 (8th Cir. 1986) (internals quotations and footnotes omitted). In any event, the Court would reach the same result under Illinois law.

diligence, might have brought forward at the time." Becker, 131 S.W.3d at 870 (internal quotations and citations omitted).

Upon consideration, the Court will deny this portion of Defendant's motion, as the elements of *res judicata* are not met in this case. First, the Court finds the "identity of the thing sued for" differs between the underlying Illinois litigation and the present suit. Specifically, in the Illinois litigation Plaintiffs sought, among other things, declaratory judgment approving Plaintiffs' building plans, and declaring Defendants'[6] failure to approve the building plans unreasonable under the circumstances. (Defendant's Motion for Summary Judgment, Exh. A, P. 5). By way of contrast, in the instant suit Plaintiffs pray for monetary damages against Defendant Julien for, among other things, costs associated with delays in the construction of the home, and costs for construction related to the errors and omissions of Defendant Julien. (Compl., ¶ 28). The Court further finds the "identity of the persons or parties to the action" to be different in the two suits, because Defendant Julien was not a party to the Illinois litigation. Defendant's Motion for Summary Judgment on the basis of *res judicata* will therefore be denied.[7]

## II. **Collateral Estoppel**

In his Motion for Summary Judgment, Defendant next asserts Plaintiffs' claims are barred by the doctrine of collateral estoppel. (Defendant's Memo in Support, PP. 3-6). Under Missouri law, the doctrine of collateral estoppel bars a claim if four requisite elements are satisfied: "(1) the issue

---

[6] Defendants in the Illinois litigation consisted of the owners of real property located in Woodcliffe Estates Subdivision in Alton, Illinois. (Complaint for Declaratory Judgment, attached to Defendant's Motion for Summary Judgment as Exh. A, ¶ 2).

[7] The Court recognizes that *res judicata* may apply to claims that could have been brought in the earlier litigation. Upon review of the record, however, the Court finds the Illinois trial judge did not permit Plaintiffs to pursue the instant claim of fraudulent misrepresentations, nor did he issue a ruling on that claim. (Defendant's Motion for Summary Judgment, Exh. P., PP. 11-12). Plaintiffs' claim thus is not barred under that theory either.

decided in the prior adjudication is identical to the issue as to which collateral estoppel is sought in the present adjudication; (2) the prior adjudication was a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party or is in privity with a party in the prior adjudication; and (4) the party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate the issue in the prior suit." Bowers v. Hiland Dairy Co., 2006 WL 220836 at *6 (Mo. App. Jan. 30, 2006) (citation omitted).

Upon consideration, the Court will deny this portion of Defendant's Motion for Summary Judgment, as Defendant fails to establish elements one and four of his claim for collateral estoppel. With respect to element one, the Court finds the issue decided in the prior litigation is not identical to the issue presented in the instant case; in fact, Defendant Julien was not involved in any capacity at the time the prior suit was filed, nor had the actions giving rise to the instant suit taken place at that time. Further, with respect to element four, even assuming Plaintiffs attempted to assert the instant claims in the underlying Illinois litigation, it is clear the trial judge failed to afford them a "full and fair opportunity" to litigate the issues in the prior suit. (See Defendant's Motion for Summary Judgment, Exh. P, PP. 11-12). Defendant's Motion for Summary Judgment on the basis of collateral estoppel must therefore be denied.

### III. Judicial Admissions

Defendant next asserts Plaintiffs made judicial admissions in the course of the Illinois litigation that defeat their present claims. (Defendant's Memo in Support, PP. 7-10). Specifically, Defendant maintains Plaintiffs admitted (1) that Defendant Julien was acting as the expert and agent for the subdivision, not for the Drostes, (2) that Plaintiffs had agreed to the June 13, 2001, set of house plans prepared by Defendant Julien, and (3) that Defendant Julien's fees and services were "reasonable and necessary." (Id., PP. 7-9).

Upon consideration, the Court will deny this portion of Defendant's motion, as the Court's review of the record reveals fact issues remain with respect to whether Plaintiffs in fact made the alleged "judicial admissions." Summary judgment on this basis thus is inappropriate and will be denied.

## IV. Contract Interpretation

In his Motion for Summary Judgment, Defendant next asserts that basic contract interpretation requires a finding against Plaintiffs, because "Plaintiffs agreed on May 30, 2001 to build their house in accordance with a set of plans, and should be held to that agreement." (Defendant's Memo in Support, P. 10). Plaintiffs respond by noting that Defendant himself admitted the plans attached to the May 30, 2001, Stipulation and Order were unworkable, and had to be revised. (Plaintiffs' Memorandum of Law in Opposition to Defendant Julien's Motion for Summary Judgment, P. 15, citing Plaintiffs' Exh. 4, Vol. I, P. 40).

Upon consideration, the Court will deny this portion of Defendant's motion. Specifically, the Court finds that while Plaintiffs admittedly agreed in the Stipulation and Order to build their home in accordance with the attached set of house plans, a genuine issue of material fact exists with respect to whether compliance with the Stipulation and Order was even possible. Further, with the instant claims Plaintiffs now assert they entered into the Stipulation and Order in the first place on the basis of fraudulent misrepresentations. Defendant's Motion for Summary Judgment on the basis of strict contract interpretation will therefore be denied.

## V. Reliance

In his final argument for summary judgment, Defendant asserts Plaintiffs' claim for fraudulent misrepresentation must be dismissed, as they fail to establish reliance, a necessary element of the claim. (Defendant's Memo in Support, PP. 11-14). Under Illinois law, the elements of a claim of

fraudulent misrepresentation are as follows: "(1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendant's intent that the statement induce the plaintiff to act; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement." Bauer v. Giannis, 834 N.E.2d 952, 957 (Ill. App. 2005) (citation omitted).

In his motion, Defendant asserts Plaintiffs fail to establish element four of their claim of fraudulent misrepresentation. Specifically, Defendant maintains a mere allegation of reliance is insufficient to state a claim; rather, Plaintiffs must show the reliance was justified. (Defendant's Memo in Support, P. 11). Defendant continues to assert that regardless of any oral misrepresentations Defendant may have made, the fact that the May 16, 2001, house plans were available to Plaintiffs in written form renders their alleged reliance on his misrepresentations unjustified. (Id., PP. 11-12).

Under Illinois law, "[f]ailure to prove justifiable reliance is fatal to claims of fraudulent misrepresentation..." Schrager v. North Community Bank, 767 N.E.2d 376, 386 (Ill. App. 2002) (citation omitted). Illinois courts have specifically held, however, that, "justifiable reliance...is a question of fact that is to be determined by the finder of fact and not by the trial court as a matter of law." Id. (internal quotations and citation omitted).

> Whether plaintiff's reliance is justifiable depends on the circumstances. "[A]ll of the facts that the plaintiff knew, as well as those facts the plaintiff could have learned through the exercise of ordinary prudence, are taken into account." The question is whether, under the circumstances and "in light of the information open to [the plaintiff], ...the law may properly say that [the] loss is his own responsibility." Our supreme court has held that "one is justified in relying upon the representations of another, without independent investigation, where the person to whom the representations are made does not have the same ability to discover truth as the person making the representations."

Id. at 386-87 (internal citations omitted).

Upon consideration of the foregoing, the Court will deny this portion of Defendant's Motion for Summary Judgment. Specifically, the Court finds the question of whether Plaintiffs were justified in their reliance on Defendant's alleged misrepresentations is one of fact for the jury, especially in light of Plaintiffs' assertion of unequal knowledge with respect to the issues at stake. Chicago Export Packing Co. v. Teledyne Indus., Inc., 566 N.E.2d 326, 329 (Ill. App. 1990).[8]

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Douglas Julien's Motion for Summary Judgment (Doc. No. 39) is **DENIED**.


Dated this 13th day of March, 2006.

    /s/ Jean C. Hamilton
    UNITED STATES DISTRICT JUDGE

---

[8] Defendant further asserts Plaintiffs' claim for fraudulent misrepresentation must be dismissed because, "[i]n Illinois, a promise to perform an act accompanied by an intention not to perform [is] not a false representation upon which a fraud charge could ordinarily be based." (Defendant's Memo in Support, P. 13, citing Bank Computer Network Corp. v. Continental Illinois Nat. Bank & Trust Co., 442 N.E.2d 586, 593 (Ill. App. 1982)). The Court will deny summary judgment on this basis at this time, as factual issues remain with respect to the exact timing and wording of any alleged misrepresentations. Defendant remains free, of course, to file a motion for directed verdict on this basis at the close of Plaintiff's evidence.